T.C. Memo. 2018-161

UNITED STATES TAX COURT

ANDREA M. EICHLER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1881-16L.                                    Filed September 24, 2018.

Edgar A. Darden, for petitioner.

Halvor R. Melom and Katherine H. Ankeny, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  In this collection due process (CDP) case, petitioner seeks review pursuant to section 6330(d)(1) of respondent's determination sustaining a final notice of intent to levy with respect to a trust fund recovery penalty under

[*2] section 6672(a).[1] The Internal Revenue Service (IRS) initiated the collection action with respect to unpaid employment taxes of $24,208 for the quarterly tax period ending June 30, 2010 (June 30, 2010, quarter), for Unicredit America, Inc. (Unicredit).

The issue for decision is whether the settlement officer abused her discretion in sustaining the proposed levy against petitioner. We hold that she did not abuse her discretion.

FINDINGS OF FACT

The parties filed a stipulation of facts which is incorporated herein by this reference. At the time of the petition, petitioner resided in Pennsylvania. Petitioner was the treasurer of Unicredit during the tax quarter at issue.

On February 12, 2014, respondent issued Letter 1153, Trust Funds Recovery Penalty Letter, to petitioner notifying her that respondent had determined that she was liable for the section 6672 penalty at issue. Petitioner filed a protest with the IRS Appeals Office. See sec. 6672(b). Appeals Officer Bridget Dunmore was assigned to petitioner's case. Ms. Dunmore held a conference with petitioner on November 14, 2014. During the conference Ms.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for all relevant times. All amounts are rounded to the nearest dollar.

**[*3]** Dunmore offered to settle petitioner's liability for $12,104, 50% of the penalty. Petitioner declined the offer. Ms. Dunmore discussed the merits of petitioner's liability for the penalty, including the definitions of willfulness and responsibility under section 6672, and advised petitioner that she appeared to meet the definitions. See sec. 6672 (imposing a penalty against persons who are required but willfully fail to collect, account for, and pay over employee income and employment taxes, so-called responsible persons). Petitioner said that she felt targeted by the IRS because her family was well known in the community.

Before the conference Ms. Dunmore had reviewed the administrative record that included information from the revenue officer assigned to petitioner's case and performed research on the Integrated Data Retrieval System (IDRS). After the conference she again performed research on the IDRS and conducted internet research. On two occasions after the Appeals conference, later the same day as the conference and again three days later, Ms. Dunmore called petitioner and advised her to concede the penalty in its entirety. The two discussed the previous settlement offer of $12,104, which petitioner then wanted to accept. Ms. Dunmore stated that the offer was no longer available. On or around January 13, 2015, Ms. Dunmore closed the conference and sustained the penalty.

[*4]    During the Appeals conference petitioner stated that she was employed fulltime by Creditron Financial Corp. (Creditron) as its human resources supervisor and was a corporate officer.  Ms. Dunmore understood that Unicredit and Creditron were owned by petitioner's family; petitioner's parents owned Creditron, and her brothers owned Unicredit.  According to Ms. Dunmore petitioner asserted that she agreed to serve as Unicredit's treasurer as a favor to her brothers.  Creditron prepared payroll taxes and other financial documents for Unicredit.  From March through November 2010 petitioner endorsed several checks for payments to Unicredit's creditors.  She signed Unicredit's Form 941, Employer's Quarterly Federal Tax Return, for the June 30, 2010, quarter.  Petitioner did not receive any compensation from Unicredit.  On the basis of these facts, Ms. Dunmore concluded that petitioner was liable for the penalty.

On May 20, 2015, respondent issued Letter 1058, Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing, to petitioner for the section 6672 penalty.  Petitioner timely requested a CDP hearing using Form 12153, Request for a Collection Due Process or Equivalent Hearing.  She did not request a collection alternative at that time.  In letters attached to Form 12153, petitioner asserted that she had disputed her liability for the penalty during the Appeals

[*5] conference and accused Ms. Dunmore of ex parte communications with the revenue officer.

The CDP hearing was assigned to Appeals Settlement Officer Linda Spano. Ms. Spano reviewed the IDRS transcripts and verified that the penalty was properly assessed, the notice and demand were timely, a balance was due, and the legal and administrative requirements for a levy were met. She noted that petitioner had had an Appeals conference and the Appeals officer had sustained the penalty. Ms. Spano scheduled a CDP hearing by teleconference, which was postponed at petitioner's request. Ms. Spano notified petitioner by letter that she could not dispute her liability for the penalty because the merits of her liability for the penalty had previously been considered by Appeals.

On October 15, 2015, Ms. Spano held a CDP hearing with petitioner's representative, Edgar Darden, who also represents petitioner before this Court. During the conference Ms. Spano again explained that petitioner could not raise the merits of her liability for the penalty because she had had a previous opportunity to dispute the liability during the Appeals hearing. Mr. Darden informed Ms. Spano that petitioner wanted to have her account marked uncollectible. He also stated that Ms. Dunmore had had improper ex parte communications with the revenue officer. Ms. Spano set a deadline of November

**[*6]** 2, 2015 (18 days after the settlement conference), for petitioner to provide a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with supporting documentation, for Ms. Spano to determine whether petitioner qualified for "currently not collectible" status. She advised Mr. Darden that she would make a decision at that time with available information if petitioner had not submitted the requested information. Petitioner did not submit the requested financial information by the deadline. On November 10, 2015, Ms. Spano made a note in the file that the requested information had not been received. She determined to sustain the levy. On December 16, 2015, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 sustaining the proposed levy.

Petitioner did not attend the trial on October 18, 2017. Her attorney requested the Court to continue the trial at a later date to hear petitioner's testimony relating to the alleged ex parte communications. The Court set a continued trial for February 22, 2018, which petitioner requested be canceled.

OPINION

This collection review proceeding was initiated pursuant to section 6330 for review of the proposed levy to collect the section 6672 penalty. No levy may be made on any property or right to property of any person unless the Secretary has

**[\*7]** notified the person in writing of the right to a hearing before the levy is made. Sec. 6330(a). A taxpayer who receives a prelevy notice has a right to a hearing before an impartial officer or employee of the Appeals Office. Sec. 6330(b)(1), (3). At the CDP hearing the taxpayer may raise any relevant issue including challenges to the appropriateness of the collection action. Sec. 6330(c)(2)(A). The Court has jurisdiction to review the Appeals officer's determination to sustain the collection action. Sec. 6330(d).

At the CDP hearing the Secretary has authority to compromise any civil case arising under the internal revenue laws on three grounds: (1) doubt as to liability, (2) doubt as to collectibility, and (3) promotion of effective tax administration. Sec. 7122(a); sec. 301.7122-1(b), Proced. & Admin. Regs. Where the merits of the underlying liability were at issue in the CDP hearing, the Court will review the matter de novo. Davis v. Commissioner, 115 T.C. 35, 39 (2000). A taxpayer may challenge the existence or amount of the underlying liability in a CDP hearing only where he did not receive a notice of deficiency or otherwise have a prior opportunity to contest that liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000). A conference with Appeals either before or after the assessment of the penalty is such an opportunity. Mason v. Commissioner, 132 T.C. 301, 319 (2009); Lewis v. Commissioner, 128 T.C. 48,

[*8] 61 (2007); sec. 301.6330-1(e)(2), Q&A-E2, Proced. & Admin. Regs. Where the underlying tax liability was not at issue, the Court will review the Commissioner's determination for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 182 (2000). Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioner raised the merits of her liability for the trust fund recovery penalty during her Appeals conference with Ms. Dunmore, and Ms. Dunmore considered the issue. The record establishes that petitioner thus had a prior opportunity to dispute her liability for the penalty during the Appeals conference. Petitioner meaningfully participated in the conference; she attended the conference and had the opportunity to present her case. See sec. 6330(c)(2)(B). Consequently, petitioner could not challenge her liability for the penalty at the CDP hearing before the settlement officer. See sec. 6330(c)(2)(B), (4)(A). Accordingly, we review the settlement officer's determination to sustain the levy for abuse of discretion.

Petitioner alleged that the Appeals officer engaged in impermissible ex parte communications with the revenue officer assigned to petitioner's case. She made these allegations in letters attached to her request for a CDP hearing, and her

[*9] representative reiterated the allegations at the CDP hearing. Petitioner argues that as a result of the ex parte communications, she should not be precluded from challenging the underlying liability at the CDP hearing. There is no evidence in the administrative record or presented at trial of impermissible ex parte communications. At trial Ms. Dunmore denied that she engaged in any ex parte communications, and we find her to be credible. Petitioner did not appear at trial. She requested a continued trial session which we granted to give her an opportunity to provide evidence of the alleged ex parte communications. She then requested that we cancel that trial session.

In the IRS Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 1001(a)(4), 112 Stat. at 689, Congress directed the Commissioner to ensure that the Appeals Office is independent and to develop a plan to prohibit ex parte communications between Appeals officers and other IRS employees so that the independence of the Appeals Office would not be compromised. In response the Commissioner issued Rev. Proc. 2000-43, 2000-2 C.B. 404, modified and superseded by Rev. Proc. 2012-18, 2012-10 I.R.B. 455, which was in effect during the Appeals conference in this case. Rev. Proc. 2012-18, sec. 2.01(1), 2012-10 I.R.B. at 456, defines ex parte communication as "a communication that takes place between any Appeals employee * * * and employees of other IRS functions,

**[\*10]** without the taxpayer \* \* \* [or her] representative being given an opportunity to participate in the communication." Petitioner did not present any evidence of ex parte communications. To the extent petitioner contends Ms. Dunmore's review of the administrative file containing information from the revenue agent is an improper ex parte communication, we disagree. See id. sec. 2.03(4), 2012-10 I.R.B. at 459 (providing an administrative file is not considered an ex parte communication). There is no evidence that ex parte communications took place in this case, and we find that the settlement officer did not err in refusing to consider the underlying liability. Cf. Drake v. Commissioner, 125 T.C. 201 (2005) (holding a prohibited ex parte communication occurred), supplemented by T.C. Memo. 2006-151, aff'd, 511 F.3d 65 (1st Cir. 2007).

We will also address petitioner's request at the CDP hearing to have her liability marked uncollectible. We review the settlement officer's administrative determinations regarding nonliability issues for abuse of discretion. Hoyle v. Commissioner, 131 T.C. 197, 200 (2008), supplemented by 136 T.C. 463 (2011); Goza v. Commissioner, 114 T.C. at 182. This Court does not independently review the taxpayer's proposed collection alternative. Our review is limited to determining whether the settlement officer's decision was arbitrary, capricious, or without sound basis in law or fact. Murphy v. Commissioner, 125 T.C. 301, 320

**[*11]** (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). An Appeals officer does not abuse her discretion by rejecting a collection alternative if the taxpayer failed to provide requested financial information within a reasonable time. McLaine v. Commissioner, 138 T.C. 228, 243 (2012); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. Taxpayers are to provide all relevant information requested by the Appeals Office, including financial information, for consideration of the issues involved in the hearing. Sec. 301.6330-1(e)(1), Proced. & Admin. Regs.

The settlement officer requested Form 433-A and supporting financial information from petitioner to determine whether the liability was uncollectible. The settlement officer provided petitioner with a reasonable time to provide the requested information, which she failed to do. At that point the settlement officer determined to sustain the levy. An issue is not properly raised at the CDP hearing if the taxpayer requested consideration of the issue but failed to present any evidence relating to the issue after being given a reasonable opportunity to do so. Id. para. (f)(2), Q&A-F3. In the absence of the necessary financial information, the settlement officer did not abuse her discretion in denying a request for the collection alternative to suspend the levy on the basis of the liability's being "currently not collectible". See Wright v. Commissioner, T.C. Memo. 2012-24,

**[*12]** slip op. at 3; <u>Shanley v. Commissioner</u>, T.C. Memo. 2009-17; <u>Chandler v. Commissioner</u>, T.C. Memo. 2005-99.

In deciding whether the settlement officer abused her discretion in sustaining the notice of levy, we consider whether she: (1) properly verified the requirements of applicable law and administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) determined whether the proposed collection action appropriately balances the need for efficient collection of tax with petitioner's concerns that the levy action be no more intrusive than is necessary. Sec. 6330(c)(3). The settlement officer met these three requirements. We find that the settlement officer did not abuse her discretion in sustaining the proposed levy. For the reasons stated above, we sustain respondent's determination to proceed with the levy.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.