# United States Tax Court

T.C. Memo. 2023-52

LUDWIG PRUFER VOLLERS III,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 37304-21L.                                     Filed April 27, 2023.

————

Ludwig Prufer Vollers III, pro se.

*Gregory M. Hahn*, *Adriana E. Vargas*, and *Patsy A. Clarke*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: In this collection due process (CDP) case, petitioner seeks review pursuant to sections 6320(c) and 6330(d)(1)[1] of the determination by the Internal Revenue Service (IRS or respondent) to uphold collection actions for 2015–2019. The parties have filed a Stipulation of Settled Issues in which they agree that petitioner's underlying liabilities for 2015–2019 are not in dispute. Respondent has filed a Motion for Summary Judgment as to the balance of the case, urging that the settlement officer (SO) did not abuse his discretion in sustaining the collection actions. Agreeing with respondent on that point, we will grant his Motion.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2]                                    *Background*

The following facts are based upon the parties' pleadings and the Declarations and Exhibits attached to respondent's Motion, which include the administrative record. *See* Rule 121(c). Petitioner resided in Bellevue, Washington (Bellevue address), when he filed his Petition.

Petitioner failed to comply with his Federal income tax obligations for 2015–2019. The IRS for those years timely assessed unpaid tax, additions to tax under section 6651(a)(1) and (2), and interest. As of November 14, 2022, petitioner's outstanding liabilities for the five years exceeded $112,000.

On November 30, 2020, in an effort to collect petitioner's unpaid liabilities for 2015–2019, the IRS sent him a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice). The IRS mailed that levy notice to petitioner's Bellevue address. Petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing, listing the Bellevue address as his current address. In his request he stated that he "need[ed] to see documentation as to how the underpayment of tax was calculated for each year" and checked the box "I cannot pay balance."

On January 21, 2021, the IRS filed a tax lien for tax years 2016–2019 and sent petitioner a Letter 3172, Final Notice of Federal Tax Lien Filing and Your Right to a Hearing. Petitioner timely submitted another Form 12153, listing the Bellevue address as his current address and expressing interest in a collection alternative by checking the box for "Offer in Compromise." He again stated that he was "challenging the calculations used to determine the tax due for the years at question."

Both of petitioner's cases were assigned to an SO in the IRS Independent Office of Appeals (Appeals). The SO reviewed petitioner's file and verified that all requirements of applicable law and administrative procedure had been satisfied. On May 19, 2021, the SO mailed to petitioner's Bellevue address a letter scheduling a telephone conference for June 29, 2021, at which both cases would be discussed.

The May 19 letter informed petitioner that the telephone conference would be his main opportunity to explain why he disagreed with the collection actions and discuss collection alternatives. The SO explained that he could not consider collection alternatives unless petitioner submitted Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with supporting financial

**[*3]** information.  If petitioner wished to propose an offer-in-compromise (OIC), he was instructed also to submit Form 656, Offer in Compromise.  Finally, the SO noted that no collection alternative for 2015–2019 could be considered unless petitioner came into compliance with his Federal tax obligations by submitting a signed Form 1040, U.S. Individual Income Tax Return, for 2020.  Petitioner did not respond to this letter and did not supply any of these documents by the conference date.

On June 29, 2021, at the scheduled time for the conference, the SO called petitioner at the telephone number listed on his CDP hearing request.  When petitioner did not answer, the SO left a voice message and asked petitioner to call him back.  The next day, the SO sent petitioner a "last chance" letter, again mailed to the Bellevue address, advising him of the missed telephone conference and affording him another opportunity to provide, within two weeks, the requested forms and financial information.  The SO advised that if no additional information was received by that deadline, the case would be closed on the basis of the information then in the administrative file.

On July 14, 2021, petitioner contacted the SO, stating that he had not received the SO's May 19 letter but that he still desired a telephone conference.  The SO replied that he was open to rescheduling the conference and agreed to email petitioner another copy of the May 19 letter, which had outlined the documentation petitioner needed to submit.  The SO emphasized that he could not consider any collection alternative unless petitioner supplied that information.

Petitioner agreed to review the SO's May 19 letter and to contact the SO on July 19, 2021, to reschedule the CDP hearing.  But petitioner did not contact the SO by that date or during the ensuing three months.  On October 26, 2021, having heard nothing from petitioner, the SO decided to close the case.

On November 22, 2021, the IRS sent petitioner a notice of determination sustaining the NFTL filing and the levy notice.  Petitioner timely petitioned this Court on December 27, 2021.  The only issue raised in his Petition was whether the IRS had correctly calculated his taxable retirement income for 2015–2017.  On November 7, 2022, the parties filed a Stipulation of Settled Issues in which they agree that "[p]etitioner does not dispute the underlying tax liability for taxable years 2015, 2016, 2017, 2018, and 2019."

**[\*4]** On December 23, 2022, respondent filed a Motion for Summary Judgment, contending that he is entitled to summary judgment because "petitioner does not challenge the underlying liabilities" and the SO "did not abuse his discretion or act in an arbitrary and capricious manner." By Order served January 25, 2023, we directed petitioner to respond to that Motion by February 23, 2023. Our Order advised that "under Tax Court Rule 121, judgment may be entered against a party who fails to respond to a motion for summary judgment." Petitioner did not respond to the Motion by our deadline or subsequently.

*Discussion*

I.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. However, the nonmoving party may not rest upon mere allegations or denials of his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see Sundstrand Corp.*, 98 T.C. at 520.

Because petitioner did not respond to the Motion for Summary Judgment, we could enter a decision against him for that reason alone. *See* Rule 121(d). We will nevertheless consider the Motion on its merits.

II.    *Standard of Review*

Sections 6320(c) and 6330(d)(1) do not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the taxpayer's underlying tax liability is properly at issue, we review the IRS's determination de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Where (as here) the taxpayer's underlying liability is not before us, we review the IRS's determination for abuse of discretion only. *Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003); *Goza*, 114 T.C. at 182. Abuse of discretion exists when a

[*5] determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

Absent stipulation to the contrary, our decision in this case is appealable to the U.S. Court of Appeals for the Ninth Circuit. *See* § 7482(b)(1)(G)(i), (2). That Court has held that, where de novo review is not applicable, the scope of review in a CDP case is confined to the administrative record. *See Keller v. Commissioner*, 568 F.3d 710, 718 (9th Cir. 2009), *aff'g in part* T.C. Memo. 2006-166, *and aff'g in part, vacating in part* decisions in related cases. In such cases, our review is limited to deciding whether the agency action is supported by the administrative record and is "not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Belair v. Commissioner*, 157 T.C. 10, 17 (2021) (quoting *Van Bemmelen v. Commissioner*, 155 T.C. 64, 79 (2020)).

III. *Abuse of Discretion*

In deciding whether the SO abused his discretion in sustaining the proposed collection actions, we consider whether he (1) properly verified that the requirements of applicable law and administrative procedure were met, (2) considered relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." § 6330(c)(3); *see* § 6320(c). Our review of the record establishes that the SO properly discharged all of his responsibilities under these provisions.

In his CDP hearing requests petitioner checked the boxes for "Offer in Compromise" and "I Cannot Pay Balance." But he never proposed a specific collection alternative, and he never submitted the required forms or financial information. An SO does not abuse his discretion by declining to consider collection alternatives where the taxpayer has not proposed any. *See McLaine v. Commissioner*, 138 T.C. 228, 243 (2012); *Nimmo v. Commissioner*, T.C. Memo. 2020-72, 119 T.C.M. (CCH) 1504, 1506. And we have consistently held that it is not an abuse of discretion for an SO to sustain collection action where (as here) the taxpayer has failed to supply information after being given repeated opportunities to do so. *See Giamelli v. Commissioner*, 129 T.C. 107, 115–16 (2007); *Huntress v. Commissioner*, T.C. Memo. 2009-161, 98 T.C.M. (CCH) 8, 10–11; *Prater v. Commissioner*, T.C. Memo. 2007-241, 94 T.C.M. (CCH) 209, 210. Finally, petitioner was not in compliance with his 2020 tax filing

[*6] obligations, and the SO could properly have rejected a collection alternative on this ground alone. *See Cox v. Commissioner*, 126 T.C. 237, 258 (2006), *rev'd on other grounds*, 514 F.3d 1119 (10th Cir. 2008); *Boulware v. Commissioner*, T.C. Memo. 2014-80, 107 T.C.M. (CCH) 1419, 1424, *aff'd*, 816 F.3d 133 (D.C. Cir. 2016).

When petitioner failed to participate in the original telephone conference, the SO responded in a cooperative fashion, leaving him a voice message and following up with a "last chance" letter. That letter was sent to petitioner's Bellevue address, his address of record with this Court and the address he had used at all relevant times in corresponding with the IRS. Petitioner does not deny having received the "last chance" letter.

Evidently in response to the "last chance" letter, petitioner contacted the SO and asked to reschedule the conference. The SO agreed and sent petitioner another copy of the May 19 letter, which outlined the information required for consideration of a collection alternative. Petitioner promised to contact the SO by July 19 to reschedule the CDP hearing, but he failed to do so.

Petitioner was clearly aware of what he needed to do and was given ample opportunities to participate in a telephone conference. The SO waited three months for a response from petitioner but heard nothing. Given petitioner's track record, the SO did not abuse his discretion by closing the case when he did. *See McAvey v. Commissioner*, T.C. Memo. 2018-142, 116 T.C.M. (CCH) 245, 249; *Scholz v. Commissioner*, T.C. Memo. 2015-2, 109 T.C.M. (CCH) 1007, 1009 ("When an SO gives a taxpayer an adequate period of time in which to respond, it is not an abuse of discretion for the SO to move ahead after encountering radio silence from the taxpayer."); *Shanley v. Commissioner*, T.C. Memo. 2009-17, 97 T.C.M. (CCH) 1062, 1066 (finding no abuse of discretion where Appeals closed the case after the taxpayer failed to respond to a 14-day deadline).

Finding no abuse of discretion in any respect, we will grant summary judgment for respondent. We note that petitioner is free to submit to the IRS at any time, for its consideration and possible acceptance, a collection alternative in the form of an OIC or installment agreement supported by the requisite financial information.

To reflect the foregoing,

*An appropriate order and decision will be entered.*